## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
JEREMY COLLINS               :      Civil No. 3:16CV01383 (HBF)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Jeremy Collins, acting pro se, brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Acting Commissioner of Social Security who denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act"). Plaintiff has moved to reverse the case and for a rehearing. The Commissioner has moved to affirm.[1]

---

[1] At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration. On January 23, 2017, Deputy Commissioner Nancy A. Berryhill became the Acting Commissioner. There is some doubt about Berryhill's current legal status in light of the recent determination by the Government Accountability Office that her tenure has expired under the Federal Vacancies Reform Act. See U.S. Gov't Accountability Office, B-329853, Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998— Commissioner, Social Security Administration (2018), https://www.gao.gov/products/D18772#mt=e-report (last accessed March 19, 2018). When a public officer ceases to hold office while an action is pending, the

For the reasons set forth below, plaintiff's Motion for
Order Reversing the Commissioner's Decision **[Doc. #12]** is **DENIED**
in part. Defendant's Motion for an Order Affirming the Decision
of the Commissioner **[Doc. #15]** is **GRANTED**.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on January 15, 2014,
alleging disability as of October 12, 2003.[2] [Certified
Transcript of the Record, Compiled on October 24, 2016, Doc. #11
(hereinafter "Tr.") 16]. Plaintiff alleged disability due to
osteoarthritis; ACL replacements and meniscus repair (right
knee); severe over pronation (right and left feet); carpal
tunnel syndrome (right and left wrist/hand); Lyme Disease; high
blood pressure; obesity; tendonitis (right elbow); posterior
tibial tendon dysfunction (right ankle); eczema; and gastritis.
[Tr. 85, 191]. His DIB claim was denied initially on May 13,
2014, and upon reconsideration on July 9, 2014. [Tr. 77-87, 88-
97]. Plaintiff timely requested a hearing before an
Administrative Law Judge ("ALJ") on July 14, 2014. [Tr. 16].

---

officer's successor is automatically substituted as a
party. See Fed. R. Civ. P. 25(d). Later proceedings
should be in the substituted party's name and the
court may order substitution at any time. Ibid. The
Clerk of Court shall amend the caption in this case as
indicated above.

Rivera v. Berryhill, No. 3:16-CV-01842 (JAM), 2018 WL 1521824,
at *1 (D. Conn. Mar. 28, 2018).

[2] Plaintiff's last dated insured is December 31, 2014. [Tr. 18].

On June 8, 2015, Administrative Law Judge ("ALJ") Eskunder Boyd held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 35-76]. Vocational Expert ("VE") Howard Steinberg testified at the hearing. [Tr. 66-73]. On July 29, 2015, the ALJ found that plaintiff was not disabled, and denied his claim. [Tr. 16-26]. Plaintiff filed a timely request for review of the hearing decision on August 19, 2015. [Tr. 10]. On May 17, 2016, the Appeals Council denied review, thereby rendering ALJ Boyd's decision the final decision of the Commissioner. [Tr. 1-4]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, acting pro se, timely filed this action for review and moves to reverse the Commissioner's decision.

## II.  STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197,

229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the

witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is

under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Mr. Collins must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limits your physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as

age, education, and work experience; the Secretary
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful
activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

"Residual functional capacity" is what a person is still capable

of doing despite limitations resulting from his physical and

mental impairments. <u>See</u> 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Bastien v. Califano</u>, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." <u>Id.</u> (citation and internal quotation marks omitted).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Boyd concluded that plaintiff was not disabled under the Social Security Act. [Tr. 16-34]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of October 12, 2013, through his date last insured of December 31, 2014. [Tr. 18].

At step two, the ALJ found that, through the date last insured, plaintiff had status post right anterior cruciate ligament ("ACL") reconstruction, carpal tunnel syndrome, and obesity that were severe impairments under the Act and regulations. <u>Id.</u>

At step three, the ALJ found that, through the date last insured, plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 19]. The ALJ specifically considered Listings 1.02A (major dysfunction of a joint(s)-involvement of one major peripheral weight-bearing joint) and 1.02B (major dysfunction of a joint(s)-involvement of one major peripheral joint in each upper extremity. [Tr. 19-20].

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b), except he can stand/walk from 2 to 4 hours total and sit for 6 hours total out of an 8-hour workday; he requires an option to sit and stand wherein he can sit for 30 minutes, alternate to a standing position for about 5 minutes, and then resume sitting; he can never climb ladders, ropes, or scaffolds, but he can occasionally climb stairs and ramps; he can occasionally balance, stoop, and crouch, but he can never kneel or crawl; he can frequently handle and finger; he must avoid work in temperature extremes; and he requires the use of a cane for ambulation.

[Tr. 20-25].

At step four, the ALJ found plaintiff was capable of performing his past relevant work as a general office clerk and/or as a survey taker. [Tr. 25-26]. The ALJ found that plaintiff was not under a disability, within the meaning of the Act, between October 12, 2013, the alleged onset date,

and December 31, 2014, the date last insured.

**V.    DISCUSSION**

On appeal, the plaintiff contends that the ALJ erred by failing to properly determine plaintiff's severe impairments at Step Two, failing to properly determine his RFC, and failing to adequately develop the administrative record. Finally, plaintiff argues that the Appeals Council's decision was in error.

The Court will address each of plaintiff's arguments in turn.

**A.    The ALJ Adequately Developed the Administrative Record.**

Plaintiff argues that the ALJ failed to adequately develop the administrative record because plaintiff's attorney failed to ask sufficient follow-up questions at the administrative hearing about his back and ankle.

Before addressing whether the ALJ's determinations on this matter are supported by substantial evidence, this court must satisfy itself that the plaintiff "had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Echevarria v. Sec'y of Health & Human Serv., 685 F.2d 751, 755 (2d Cir. 1982) (citation and internal quotation marks omitted). In that regard, plaintiff must show how he was prejudiced by the ALJ's failure to obtain additional treatment records or testimony. See Nelson v. Apfel, 131 F.3d

1228, 1235 (7th Cir. 1997). To demonstrate prejudice, plaintiff must show that these records or testimony would "undermine [] the ALJ's decision." Lena v. Astrue, No. 3:10CV893 (SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) (quoting King v. Astrue, 3:09CV100(SRU), slip. op. at 20-22 (D. Conn. Sept. 22, 2010)(unpublished)). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." Nelson, 131 F.3d at 1235 (citation and internal quotation marks omitted).

Plaintiff treated with Dr. Simon complaining of back pain on April 21, 2015, after plaintiff's date last insured. This is the only medical evidence of record of treatment for back pain prior to the ALJ's July 2015 decision. Plaintiff fails to articulate how this record triggered an affirmative duty to develop the record further. See 20 C.F.R. §404.1512(b)(1)(ii) ("[W]e will develop your complete medical history for the 12-month period prior to the month you were last insured for disability insurance benefits.").

Further, "where there are no obvious gaps in the administrative record, and where the ALJ already possess a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Here,

plaintiff does not assert that there is additional medical evidence prior to the date last insured, rather he contends that his lawyer failed to ask follow-up questions about his ankles and back at the administrative hearing. [Doc. #12-1 ¶11 (citing Tr. 40)]. However, at the hearing, plaintiff's lawyer clearly referred to his limitations due to pain in his ankles and wrists. See Tr. 40 ("He is orthopedically exertionally limited by pain...primarily in his knees and wrists...and...ankle.").

Moreover, plaintiff had a full opportunity to testify at the hearing. The ALJ asked plaintiff, "in your own words, what are the medical issues that are keeping you from working? Why are you disabled?" [Tr. 48]. In response, plaintiff testified at length regarding knee, ankle, wrist and hand pain and limitations due to pain and prior surgeries. [Tr. 48-60]. He did not assert disability due to back pain, despite the opportunity to do so.[3] Plaintiff merely speculates that additional testimony at the hearing might have undermined the ALJ's decision. This is not enough to warrant a remand. See Nelson, 131 F.3d at 1235.

Accordingly, the Court finds that the ALJ did not fail to adequately develop the administrative record.

**B.    The ALJ did not err at Step Two.**

At Step Two, ALJ Boyd found that plaintiff suffered from

---

[3] As discussed infra, the only treatment records for back pain post-date plaintiff's date last insured. See Tr. 7-8; 306-08.

several severe impairments. Plaintiff contends that the ALJ failed to properly consider all of his impairments, and that he should have evaluated his back pain, ankle impairments and severe obesity at this step of the sequential evaluation.

A Step Two determination requires the ALJ to determine the severity of the plaintiff's impairments. 20 C.F.R. §§404.1520(a)(4)(ii); see also id. at (c). At this step, the plaintiff carries the burden of establishing that he is disabled, and must provide the evidence necessary to make determinations as to her disability. 20 C.F.R. §404.1512(a); Talavera, 697 F.3d at 151 ("The applicant bears the burden of proof in the first four steps of the sequential inquiry...."). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See SSR 96–3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). Impairments that are "not severe" must be only a slight abnormality that has a minimal effect on an individual's ability to perform basic work activities. Id.

At Step Two, if the ALJ finds any impairment is severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), aff'd, 515 F. App'x 32 (2d Cir. 2013) (quoting Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003)). "Under the

regulations, once the ALJ determines that a claimant has at
least one severe impairment, the ALJ must consider all
impairments, severe and non-severe, in the remaining steps."
Pompa, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)).
While the Second Circuit has not directly stated that
incorrectly applying the Step Two legal standard is harmless
error, this approach is consistent with the Second Circuit's
finding that Step Two severity determinations are to be used to
screen out only de minimis claims. See Dixon v. Shalala, 54 F.3d
1019, 1030 (2d Cir. 1995). Further, other Circuits have found
that incorrectly applying the Step Two standard is harmless
error where an ALJ finds some of plaintiff's impairments severe
and continues with the sequential evaluation. See, e.g.,
Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008)
("Nevertheless, any error [] became harmless when the ALJ
reached the proper conclusion that [plaintiff] could not be
denied benefits conclusively at step two and proceeded to the
next step of the evaluation sequence.").

    Here, the ALJ found that plaintiff had the severe
impairments of: status post right anterior cruciate ligament
(ACL) reconstruction; carpal tunnel syndrome; and obesity.[4] [Tr.

---

[4] Plaintiff also argues that the ALJ failed to consider his
obesity at step two of the sequential evaluation. [Doc. #12-1 ¶3
(citing Tr. 18). "The SSA removed obesity from the list of
impairments in October 1999. Nonetheless, the ALJ must consider

18]. At Step Two, the ALJ did not discuss the other impairments (back pain and ankle impairments) as to which error is claimed. Nevertheless, because the ALJ did find several severe impairments and proceeded with the sequential evaluation, all impairments, whether severe or not, were considered as part of the remaining steps. Indeed, the ALJ's decision reflects that he considered plaintiff's alleged ankle impairment, situational depression, and obesity in following the above-described sequential process. See Tr. 18-19 (evaluating his situational depression); Tr. 21 (noting plaintiff's complaints of severe pain in his right knee and ankle pain); Tr. 23 (summarizing medical records on obesity); Tr. 24 (evaluating obesity in determining RFC). Contrary to plaintiff's contention, the ALJ expressly found that plaintiff's obesity was a severe impairment and considered his weight in assessing his RFC. [Tr. 18, 23, 24]. With respect to plaintiff's alleged back impairment, the record contains no evidence of a medically determinable back impairment prior to plaintiff's date last insured. [Tr. 306-08

_____

the effects of obesity in combination with other impairments throughout the five-step inquiry." Dieguz v. Berryhill, 15 Civ. 2282 (ER)(PED), 2017 WL 3493255, at *3 (S.D.N.Y. Aug. 15, 2017) (citations omitted). The Court finds that the ALJ gave proper consideration to plaintiff's obesity throughout the five-step disability analysis. [Tr. 18 (listing obesity as a severe impairment); Tr. 23 ("the claimant's obesity has been factored into his residual functional capacity."); Tr. 24 ("Indeed, the claimant's obesity clearly contributes to his knee symptoms.").

(treatment record dated 4/21/15 noting plaintiff was seen complaining of chronic low back pain). Indeed, plaintiff did not allege a disabling back impairment in his reports filed with the Commissioner and he did not list it as a disabling condition at the hearing. [Tr. 48-49; 85, 91, 191]. Moreover, the record lacks any objective medical evidence to support the existence of a medically determinable back impairment prior to the date last insured.

Although the ALJ did not find a medically determinable ankle impairment, he considered Dr. Blume's treatment record dated February 22, 2014, assessing severe posterior tibial stage dysfunction with valgus component of the ankle and peritalar dislocation with severe obesity and considered this record in assessing plaintiff's exertional limitations in determining his RFC. [Tr. 22-23 (citing Ex. 5F, pg 2); see Tr. 248-250]. Further, the State agency medical consultants, to whose opinions the ALJ gave partial weight, also reviewed and considered Dr. Blume's records when assessing plaintiff's RFC. [Tr. 23-24; 83, 94].

Accordingly, the ALJ's failure to specifically determine whether each of plaintiff's claimed impairments was severe is harmless error, and would not support a reversal of the Commissioner's decision. Cf. Jones-Reid, 934 F. Supp. 2d at 402 (finding harmless error where ALJ failed to discuss certain

impairments at Step Two). Therefore, the Court finds no
reversible error at Step Two of the sequential evaluation.

**C.    There is Substantial Evidence Supporting the ALJ's RFC
       Determination.**

Plaintiff next argues that the ALJ failed to properly
determine his RFC, alleging that the ALJ "wrongly interpreted,"
"ignored" or "misunderstood" various medical records and
erroneously found that he had "no limitation" in his activities
of daily living. [Doc. #12-1 at 2-5].  The ALJ found that
plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> except he can stand/walk from 2 to 4 hours total and
> sit for 6 hours total out of an 8-hour workday; he
> requires an option to sit and stand wherein he can sit
> for 30  minutes, alternate to a standing position for
> about 5 minutes, and then resume sitting; he can never
> climb ladders, ropes, or scaffolds, but he can
> occasionally climb stairs and ramps; he can
> occasionally balance, stoop, and crouch, but he can
> never kneel or crawl; he can frequently handle and
> finger; he must avoid work in temperature extremes;
> and he requires the use of a cane for ambulation.

[Tr. 20].

Despite plaintiff's arguments to the contrary, the ALJ's
RFC determination is supported by substantial evidence of
record. Specifically, the ALJ conducted a detailed review of the
relevant evidence, including plaintiff's testimony, treatment
notes from plaintiff's medical providers, and the medical
opinions of record. [Tr. 20-25]. The ALJ permissibly assigned
"partial weight" to the opinions of the State reviewing non-

17

examining physicians Drs. Sittambalm and Kahn. The limitations
assessed by their respective physical RFC determinations support
the ALJ's RFC findings. However, the ALJ went further, finding
greater limitations than the State agency physicians. Compare
Tr. 23-24, with Tr. 82-83; 92-94.

Plaintiff takes issue with the ALJ's assessment that he had
"no limitations" in his activities of daily living because he
was able to dress himself slowly. [Doc. #20-1 ¶5]. However,
defendant correctly points out that that statement was made when
the ALJ was considering the paragraph B criteria in the
psychiatric review technique to evaluate plaintiff's claim of
situational depression. [Tr. 19; see 20 C.F.R. §404.1520a]. The
ALJ found that plaintiff's situational depression caused no
functional limitation in activities of daily living. [Tr. 19].
The ALJ stated that "[t]he limitations identified in the
"paragraph B" criteria were not a residual functional capacity
assessment but are used to rate the severity of mental
impairments at steps 2 and 3 of the sequential evaluation
process." [Tr. 19]. The Court finds no error on this claim.

Plaintiff next argues that the ALJ did not have a complete
record when assessing plaintiff's RFC. However, for reasons
previously discussed, the Court finds that the ALJ adequately
developed the record, and therefore rejects this argument.

Plaintiff argues that the ALJ did not properly assess the

18

limitations caused by his carpal tunnel; however, there is
substantial evidence in the record to support the ALJ's
assessment. [Tr. 21]. The ALJ's decision reflects that he did,
in fact, consider plaintiff's allegations of pain with tingling
and numbness, their consistency or inconsistency with the
objective medical evidence, and how such complaints resulted in
some functional limitations. The Court finds that the ALJ's
decision reflects that he considered plaintiff's subjective
complaints of pain with numbing and tingling along with his
hearing testimony, and the objective medical records. See, e.g.,
Tr. 21 (noting plaintiff's complaints of pain, numbing and
tingling and summarizing hearing testimony); Tr. 23 (summarizing
medical records and treatment for wrist pain); Tr. 25 (making
credibility determination as to limitations caused by carpal
tunnel syndrome). The ALJ further conducted a credibility
analysis and permissibly found plaintiff's claims of
debilitating functional limitations only partially credible.[5] See
Tr. 25. Accordingly, the Court finds no error.

Plaintiff next argues that the ALJ "wrongly interpreted a

---

[5] The Court further recognizes that the ALJ had an opportunity to
personally observe plaintiff at the hearing. Cf. Suarez v.
Colvin, No. 14CV6505(AJP), 2015 WL 2088789, at *23 (S.D.N.Y. May
6, 2015) ("[C]ourts must show special deference to an ALJ's
credibility determinations because the ALJ had the opportunity
to observe plaintiff's demeanor while [the plaintiff was]
testifying." (quoting Marquez v. Colvin, No. 12CV6819(PKC),
2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013))).

single scintilla of medical evidence in order to draw a host of improper conclusions," referring to a pre-operative examination conducted on December 5, 2013, which stated that, "[h]e is able to walk 1 mile without SOB [shortness of breath]." [Doc. #20-1 ¶¶6, 9 (citing Tr. 319)]. However, the explanation provided by plaintiff that he was encouraged to falsely assert he could walk one mile in order to obtain surgical clearance is based on his subjective testimony and there is no medical evidence to support it. Moreover, the ALJ did not rely solely on this pre-operative evaluation. Rather, there is other substantial evidence of record to support the ALJ's assessment of functional limitations in the RFC. See e.g. Tr. 22 (summarizing treatment records for knee); Tr. 24 (noting post-operative report that plaintiff was "doing quite well and has significant improvement"); Tr. 24 (summarizing evidence in record showing 5/5 muscle strength). The ALJ further considered the RFC assessments by State agency Drs. Sittambalam and Kahn. See Tr. 23-24 (reviewing functional limitations assessed by DSS doctors in initial determination and on reconsideration). Plaintiff has otherwise failed to demonstrate error in the ALJ's RFC finding. Accordingly, the Court finds no error.

Finally, plaintiff contends that the ALJ erred in his recitation of Dr. Blume's treatment record, arguing that the ALJ "implies that Collins complained to Dr. Blume about his knee and

Blume found no problem." [Doc. #12-1 ¶8]. The treatment record shows that plaintiff did report "multiple right knee surgeries," and did not attribute his debilitating pain to his knee when recounting his medical history to Dr. Blume. It is also accurate that the assessment by Dr. Blume and the radiographs were for the left foot. [Tr. 249-50]. The record shows that the ALJ considered Dr. Blume's treatment record in assessing exertional and postural limitations in the RFC, as well as the RFC determinations by the State agency doctors. Accordingly, the Court finds no error.

Thus, for the reasons stated, the Court finds no error in the ALJ's RFC assessment, which is supported by substantial evidence of record.

### D.    The Appeals Council Properly Denied Review

Finally, the Court finds that the Appeals Council properly denied plaintiff's request for review of the ALJ's decision and properly concluded that "the additional evidence [submitted to the Appeals Council] does not provide a basis for changing the Administrative Law Judge's decision." [Tr. 2].

> "[N]ew evidence submitted to the Appeals Council
> following the ALJ's decision becomes part of the
> administrative record for judicial review when the
> Appeals Council denies review of the ALJ's decision."
> Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). "The
> only limitations stated in [20 C.F.R. §§ 404.970(b)
> and 416.1470(b)] are that the evidence must be new and
> material and that it must relate to the period on or
> before the ALJ's decision." Id.

Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015); see 20 C.F.R. §416.1470(a)(5)("[T]he Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."); Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir. 2010)("the Appeals Council...will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence. 20 C.F.R. §416.1470.").

Plaintiff's last date insured was December 31, 2014. The ALJ's decision is dated July 29, 2015. The medical evidence submitted to the Appeals Council consisted of a Lumbar MRI dated December 27, 2015, nearly a year after plaintiff's date last insured and nearly five months after the ALJ's decision. [Tr. 7-8]. As previously discussed, there is no evidence of a medically determinable back impairment during the relevant period. The record shows that plaintiff first sought treatment for his back pain in April 2015, more than 3 months after his date last insured. [Tr. 306-08]. Thus, the newly submitted medical evidence did not relate to the time period adjudicated by the

ALJ and could not affect the ALJ's decision that plaintiff was not disabled prior to December 31, 2014.

Accordingly, the Court finds no error by the Appeals Council denying plaintiff's request for review.

**VI. CONCLUSION**

For the reasons stated, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #12]** is **DENIED.** Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #15]** is **GRANTED.**

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #22, 23] on December 11 and 19, 2017, with appeal to the Court of Appeals.  Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport this 6th day of April 2018.

                              _____/s/_____
                              HOLLY B. FITZSIMMONS
                              UNITED STATES MAGISTRATE JUDGE